Félix Banuchi, Plaintiff and Appellant, *v.* Irrigation District, etc., Defendant and Appellee.

No. 5795. Argued January 12, 1932.—Decided July 12, 1932.

On Rehearing July 29, 1932.

752

*Juan B. Soto* for appellant. *James R. Beverley, Attorney General, Tomás Torres Pérez, Assistant Attorney General,* and *Antonio Piñero* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action for damages brought by Félix Banuchi against the irrigation district known as Isabela Irrigation Service.

The plaintiff alleged that he was the owner of two rural properties and that 47 acres from one of them and the whole area of the other amounting to 12 acres were included in the provisional irrigation district, according to the information communicated to him by the district itself on August and October, 1928; that on December 16, 1928, and on January 9, 1929, the district started to supply water to the said lands, which service was continued until June 26, 1929, when "the plaintiff was notified by the defendant that thenceforth the water service would be discontinued indefinitely"; "that in said notice . . . . the plaintiff was advised that as soon as conditions would permit the water service that had been dis-

continued would be re-established"; "that said water service . . . . . has not been given to the plaintiff at any time thereafter . . . . . the said parcels having been deprived of irrigation, without the consent and against the will of the plaintiff"; that when notified the plaintiff had already planted 21 acres of the first parcel and the whole area of the second in sugar cane, and that the crop yielded $7,040.25 less than it would have yielded if the water service had not been discontinued; that as a result of the discontinuance of the water services the plaintiff was compelled to sell his properties to Central Cambalache for $6,000 less than the amount that he could have obtained therefor, and thereby sustained damages amounting to the sum of $13,040.25 for which plaintiff demands judgment, with costs.

Upon being summoned, the defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and after hearing both parties the court sustained the demurrer. The plaintiff then moved for a final judgment which was rendered, and he thereupon took the present appeal.

The judgment of the court is based on a reasoned decision which reads in part as follows:

"The theory of the plaintiff is predicated on the assertion that 'An action for damages will lie against an irrigation district for the failure to supply water to which one within the district is entitled.' Kinney on Irrigation and Water Rights, vol. 3, p. 3066.

"The theory of the defendant is embodied in the following contentions: (1) that the defendant in this case is a public corporation; (2) that under the Irrigation Act no contractual obligation arises as between the irrigation district and the consumers; (3) that the action brought herein is one in tort; and (4) that the complaint must allege as an essential and necessary fact the right of the plaintiff to be furnished a supply of water, and that in the case at bar the plaintiff is not entitled to demand from the defendant such a supply, as his lands have not been included within the irrigation district, nor had he paid or was bound to pay any charges for water supplied, since such service was of an experimental character, at the

time the service of water was discontinued, and therefore no right had been established in his favor implying a duty on the part of the defendant to supply him with water.

"Both sides agree that this is not an action *ex-contractu* but one in tort; therefore it is not necessary to determine, for the purpose of this decision, whether or not under the Irrigation Act any contractual obligation exists between the irrigation district and the consumers."

The court then analyzes acts Nos. 59 and 63 of 1919, (Sess. Laws, pp. 320 and 348), creating the irrigation district, and subsequent amendments thereto, and reaches the conclusion that the defendant is a public service corporation. In support of this conclusion, it cites 7 R. C. L. 40; 14 C. J. 72; Long on Irrigation pp. 531, 533; L.R.A. 1918 B, pp. 1010, 1012, and goes on to say:

"The defendant being a public corporation, is it liable for damages caused by the failure to supply water to consumers for their lands within the irrigation district? Let us see what the jurisprudence establishes in this respect:

" 'Injuries from defects or torts.—A county is not liable for a defect or want of efficiency in the plan of a drain, established pursuant to statute; neither is it liable for the negligence or failure of the contractor to whom the work of construction is let to perform such work in accordance with the plan adopted. Nor is a county or a drainage district liable in damages for injuries caused by the tortious acts of its officers, but the remedy is against them personally; although the trustees, under whose control and supervision the district is, may be enjoined if they act without authority or wilfully or maliciously.'—14 Cyc. 1057.—*Hensley* v. *Reclamation Dist.* No. 556 (121 Cal. 96). It further cites 9 Cal. Jur. 75; 19 C. J. 709–10; *San Francisco Savings Union* v. *Reclamation Dist.*, 144 Cal. 639, and L.R.A. 1918 B, 1011–1012.

"The doctrine supported by the cases referred to in the foregoing citation, to the effect that an irrigation district is not liable for damages unless it is so provided by law, has not been uniformly followed by the courts of the Union. In many cases the contrary has been upheld, because although it is admitted that such districts have the character of quasi-public corporations, they are not really governmental agencies and therefore are not exempt from liability. See L.R.A. 1918 B, pp. 1014–1015."

After citing other decisions, the district court further says:

"In order to determine the liability of an irrigation district reference should be had to the statute creating it. Neither in Act No. 63 of 1919, authorizing the construction of an irrigation system in the vicinity of Isabela and Aguadilla, nor in the subsequent amendments thereto, is there any provision granting to a consumer of irrigation water the right to sue the irrigation district for damages for its failure to supply water for the lands comprised within the irrigation district. The remedy of the owner or lessee of such lands, in case he should feel aggrieved by the refusal of the Commissioner of the Interior to supply the water, is clearly established in section 34 of said act which in its pertinent part reads as follows:

" 'Section 34.— . . . *Provided, however,* That nothing in this Act shall prevent the proper distribution of water by rotation among the various tracts of land through any canal or lateral, and that should any owner or lessee of such land believe himself aggrieved by the refusal of the Commissioner of the Interior of Porto Rico to furnish water, such owner or lessee may bring action in the district court of the district in which the said lands are situated to compel the Commissioner of the Interior of Porto Rico to turn the water onto the land; *Provided, further,* That in case an action shall be brought by a lessee of any land or lands, as provided in this paragraph, the owner of the said land or lands shall not be bound by the decision of the said court unless the said owner was a party to the suit, but such owner may be made a party, either plaintiff or defendant, to such a suit either upon his own motion, that of the said lessee, or that of The People of Porto Rico; *And provided, also,* That in case the court upholds the plaintiff the Commissioner of the Interior of Porto Rico shall immediately turn on the water upon receipt of notice from the court'; . . .

"Summing up and finally, from a consideration of the questions raised by both sides the court has reached the following conclusions: That the plaintiff's lands had not been included within the permanent irrigation district; that no charges whatever had been paid by the plaintiff at the time of the discontinuance of the water supply, since such service was in the experimental stage; that the action brought by the plaintiff is not one *ex contractu*; that the complaint does not state facts sufficient to constitute an action in tort; that the remedy expressly and specifically provided by the applicable

act, in section 34 already partially transcribed, has not been followed in the present case; that had such remedy been resorted to the plaintiff, if successful in the action, would have attained his immediate purpose; that the defendant is a public corporation and, as such, in a case like the one under consideration and in the light of the adjudicated cases, the Isabela Irrigation District is not liable for damages by reason of its failure to continue supplying water to a consumer, especially under the allegations of the present complaint, since from a study of the authorities and of our statute, we find that the decisions which appear to be most applicable to the case at bar are those from such State courts where it has been held that an irrigation district is not liable for damages unless it is so provided by statute.

"In view of the foregoing considerations, the court holds that the demurrer to the complaint should be sustained, without special pronouncement of costs."

The appellant in his brief assigns four errors, as follows:

"1.—The District Court of Aguadilla erred in finding that the plaintiff's lands had not been included within the permanent irrigation district.

"2. The said court erred in finding that the complaint failed to state facts sufficient to constitute a cause of action.

"3.—The said court erred in finding that the plaintiff has not prosecuted the action authorized by law.

"4.—The said court erred in finding that the defendant district can not be sued."

We will consider together the last three errors assigned, and as regards the first we will only say that it is without merit, since the district court was absolutely justified in concluding, from the very allegations of the complaint, that the plaintiff's parcels of land had not been included within the permanent irrigation district. The act itself provides that the said district shall be established in 1932.

After a careful consideration of all the questions involved and in the light of the law and the jurisprudence cited by the parties, we are inclined to hold that an irrigation district like the one here involved is a corporation that partakes of a

dual character. It is a public corporation in respect to its public functions, but it must be considered as a private corporation in relation to the private rights of the landowners of the district. As stated by Mr. Justice MacLane, of Idaho, cited in Long on Irrigation, pp. 531–533,

"An irrigation district is a quasi-public corporation, organized, however, to conduct a business for the private benefit of the owners of land within its limits. They are the members of the corporation, control its affairs, and they alone are benefited by its operations. It is, in the administration of its business, the owner of the system in a proprietary rather than in a public capacity, and must assume and bear the burdens of proprietary ownership."

That being so, we are inclined to decide that the said irrigation district may be subject to an action for damages, in addition to the remedy provided in section 34 of Act No. 63 of 1919.

In view of the above conclusions, does the complaint state facts sufficient to constitute the cause of action exercised? In our judgment the question should be answered in the negative.

The following is transcribed from Ruling Case Law:

"It has been said that at common law there was a cause of action whenever one person did damage to another, wilfully and intentionally, without just cause or excuse, and the general statement is familiar that wherever there is a wrong there is a remedy. This rule contemplates, however, that a wrong is suffered by the unlawful act of another, and if there was no legal wrong, though damage resulted, there is no right of action, it being damnum absque injuria. In other words, 'injury,' in its legal sense, means damage resulting from an unlawful act. The fact that a case is novel does not operate to defeat a recovery, if it can be brought within the general rules of law applicable to torts. The general test to determine whether there is a liability in an action of tort is the question whether the defendant has by act or omission disregarded his duty. Accordingly the proper exercise of a legal right cannot constitute a legal wrong for which an action will lie. The three main heads of duty, with which the law of torts is concerned, namely, to abstain

from wilful injury, to respect the property of others, and to use due diligence to avoid causing harm to others, are all alike of a comprehensive nature. The acts which will give rise to an action may be classified as follows: (1) an act which was one purposely and wilfully, without lawful excuse or justifiable occasion, and with the actual or constructive intent to produce harm; (2) the commission of a distinct legal wrong, or failure to discharge some special or absolute duty which, in itself, constituted an invasion of the rights of, or an infraction of the obligation due to, another, who was without fault; or an act done or omitted, in violation of a positive statute, which may have resulted in injury to someone, within the protection and purpose of the statute, who was, without fault, materially contributing to the injury; there being in either case no intent or expectation, on the part of the defendant, that injury would result from the act or omission; (3) an injurious act or omission not done or omitted with any intent to produce harm, nor in the invasion of any distinct or absolute legal right of another, nor in violation of any positive law or special or absolute obligation; but which, in the exercise of due diligence and skill, might have been foreseen and prevented, and the person upon whom the injury has fallen may have been one for whose safety and protection the defendant was, at the time, under some qualified or limited obligation.'' 26 R.C.L. 757, 758.

The complaint fails to state the precise terms on which the defendant undertook to supply the water. It is only alleged that the water supply was discontinued ''without the consent and against the will of the plaintiff.'' No unlawful act or injurious intention is charged against the defendant. On the contrary, it appears from the complaint and the statute that water was being supplied from a provisional irrigation district; that the discontinuance of the water service had been notified with a promise to renew the same as soon as circumstances allowed, and that the plaintiff was not yet paying for the water he was receiving.

For the foregoing reasons the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.

ON REHEARING

July 29, 1932.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

A motion has been filed in the present case for a reconsideration of the judgment rendered by this Court on the 12th of this month, either setting it aside or, as an addition, granting leave to the plaintiff to amend his complaint in accordance with the opinion.

We have studied the motion and think that the second prayer should be granted, but not as to the first prayer.

The grounds for the second prayer are summarized by the appellant as follows:

"(a) Because if the plaintiff moved for a final judgment instead of amending his complaint it was due to the fact that the judgment of the district court barred any amendment to the complaint, for one of the holdings on which it was based was that the defendant is not liable for damages as it is a public corporation; which rendered any amendment useless.

"(b) Because this Court has decided in its judgment as stated in the opinion, that said irrigation district can be sued for damages; hence the complaint is capable of amendment.

"(c) Because it would be a matter of clear justice, and it would prejudice no right."

It would be sufficient to examine the above grounds in connection with what this Court has said in the opinion forming the basis of its judgment in order to conclude that the prayer should be granted.

By virtue of the foregoing, an order shall be entered remanding the case to the proper district court for further proceedings not inconsistent with this opinion and with that on which the judgment of July 12 is based.